## THE DELAWARE.

## THE BALTIMORE.

## THE HENRY LEE.

## P. DOUGHERTY CO. v. THE BALTIMORE et al.

### No. 16721.

District Court, E. D. New York.

Jan. 18, 1944.

John R. Stewart, of New York City, for libellant.

Burlingham, Veeder, Clark & Hupper, of New York City (Chauncey I. Clark and Charles E. Wythe, both of New York City, of counsel), for respondent.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for Tug Henry Lee.

GALSTON, District Judge.

The libel charges that on October 23, 1942 the barge Delaware was the port hawser boat of two boats in tow of the tug Henry Lee and was bound from New York Harbor to Perth Amboy, New Jersey; that in the vicinity of Tuft's Point the tug Baltimore, bound from South Amboy to New York, approached and endeavored to pass the Lee and her tow; that in so doing the tug Baltimore was so negligently handled and controlled that one of her barges came into collision with the barge Delaware, causing damage to that vessel.

The Pennsylvania's answer denied liability and by petition impleaded the Henry Lee, charging that on October 23, 1942 the tug Baltimore left South Amboy with twelve loaded coal barges in tow on hawsers astern bound for the Pennsylvania Railroad stake-boat in upper New York Bay; that the tug St. Martin was made fast alongside the starboard boat of the second tier throughout the tow; that while the Baltimore was proceeding north on her own starboard side of the Kills, below Tuft's Point, the tug Henry Lee was observed with two barges above Tuft's Point; that the Henry Lee sounded a one blast passing signal which the Baltimore answered with one blast, thus agreeing to a port to port passage; that as the vessels approached Tuft's Point where the channel turns sharply westward, the Henry Lee's tow sheered across the channel in an easterly direction; that the Baltimore sounded an alarm and stopped her engines and the St. Martin also stopped her engines; that the Henry Lee's tow continued to sheer, and the port bow of the Delaware, the Henry Lee's port barge, collided with the port corner of the barge, Cape Lane, the Baltimore's port hawser barge, on the easterly side of the channel.

The respondents-impleaded contend that after the exchange of one whistle signals the Lee tow continued on and about abreast of the black can buoy at Tuft's Point the tugs passed each other with about 100 feet of clearance, the tug Lee being about 75 feet off the black buoy. Continuing the answer to the libel and to the petition, the Lee alleges that she cut close to her own starboard and passed the first barge in tow of the tug Baltimore about 75 feet off; that the tug Baltimore in coming down the bend pulled sharply toward the Jersey shore and brought her head port barge into contact with the barge Dela-

ware, the port barge of the Lee; that the collision took place abreast of the black can buoy, the starboard barge of the Lee tow, being close to that buoy.

The versions given by members of the two tows follow substantially the allegations of the respective pleadings. The parties agree that the collision happened in daylight at about 5:50 p. m. and that the tide at that time was flood which meant that the Baltimore had it underfoot and that the Lee was proceeding against the tide.

Foster, who was captain of the barge Delaware, gave its dimensions as 235 feet in length and 40 feet in width. On this voyage she was light, drawing about 7 feet, 6 inches, having at the bow a free board of 28 to 30 feet, with less amidship and at the stern, the forecastle hatch being high. She had no motive power of her own but did have steering gear located in the pilot house which is atop of the cabin aft. The Lee tow was made up at Red Hook Flats, bound for Perth Amboy. The barge Baltimore was made fast on the Delaware's starboard side, the Lee having the two barges on a bridle hawser. The distance from the stern of the Lee to the stems of the barges was approximately 30 fathoms. It should be added that the Baltimore also was light. The Lee tow left Red Hook Flats between 2:30 and 3 o'clock p. m., crossed the bay and proceeded to Kill van Kull. Foster was in his wheel house when he saw the Baltimore tug and tow approaching from the opposite direction. This tow was also on a bridle and at that time the Baltimore and tow were rounding the bend, and the Lee and her tow were approaching the same bend. Short blasts were exchanged, the Lee tow being nearer to the Jersey side at that time, Foster adding that the port side of the Delaware was also nearer to the Jersey shore. This man observed the Baltimore coming around the bend and starting to straighten out as she was crossing the channel, but while attempting to do so her tow got crosswise in the channel. In straightening out, the head boat in the Baltimore tow was brought into collision with the Delaware. He stated that at the time of the collision the Delaware had not reached the bend and was still closer to the Jersey shore than to the Staten Island shore.

The Lee has a horse-power of 750. The Lee was about off Armour's dock at Car-

teret when Ramsdale, the mate in charge of the Henry Lee first saw the tug Baltimore, about 1500 feet away, and it appeared that the two tows could pass safely port to port. He said the Lee was on her starboard side of the channel with the tow following in line. Ramsdale thereupon sounded a one whistle signal and received a response of one whistle. The Lee was traveling at about three or three and a half miles an hour against the tide. He headed up to the black can buoy No. 5 as close as he could get to his starboard side. The Baltimore came down the channel, and the two tug boats passed with a clearance of about 100 feet. The Lee was off the black buoy about 50 feet at that time while just abeam of it and heading for the coal dock. The Delaware, he said, then "hit up against the coal boat that was on the front tier of the Pennsylvania tow". At that time the Lee, he said, was only 25 feet from the can buoy. The Baltimore, before reaching the bend, started hauling for Jersey. Ramsdale added: "Of course, she had to do that"; and the head tier of her barges also was pulled to the Jersey side, the last tier swinging to the Staten Island side. Ramsdale stated he had no difficulty, on the other hand, in rounding the point with his barges, though the Henry Lee had to head off at an angle in order to swing the barges with her, with the Baltimore the inshore barge, being about 30 feet off the black can buoy. Ramsdale admitted that he did not stop his engines nor did he give a danger signal.

As for the Baltimore tow version: there were twelve boats making up the tow, four tiers of three boats in each tier. The towing tug was the Baltimore. The Martin was made fast on the starboard side of the second tier. The purpose of the helper tug was to help keep the tow straight, and in rounding the turn it seeks to help break the tow around the bend. When the captain of the Martin first saw the approaching tow, the Baltimore was somewhat below the buoys at Tuft's Point, perhaps a couple of hundred yards. At that time the on-coming tow was a little above Armour's dock, i. e. north of the bend. The tide being with the Baltimore tow, they were making over the ground about four miles an hour. His testimony is that at the time the Lee tow was coming down from Armour's plant it appeared to be a bit on the Lee's starboard side of the channel. The hawsers from the tug Baltimore to the

head tier were 50 feet in length. As the tows approached he said it looked as though the Lee's barges were going to hit the head tier. The Lee was tailing off at an angle toward the Jersey shore to break a sheer (he said nearly a right angle) but the Lee's barges did not come around. At that time the Baltimore had stopped her engines and was on the starboard side of the channel. He added that the Baltimore was straight ahead of her tow. According to Good and the other witnesses, it appears that a flood tide will set toward the Staten Island shore.

Warner, a deckhand on the St. Martin, was in the pilot house with Good, the master. He did not agree with the captain of the St. Martin in estimating that the Henry Lee's stem was only about 10 feet from the black buoy, but said it was near the black buoy, and that to turn the barges around the bend the Lee would have to haul sharply to her own starboard. He noticed a strain on her port hawser. But he disagreed with other Baltimore witnesses in that the Lee barges, he said, did not take a sheer. They just failed to make a turn at the bend.

Manion, also a deckhand on the St. Martin, saw the Henry Lee first when she was about three-quarters of a mile north of the bend. The St. Martin then was just starting to go inside the bend. He said that when he saw the Lee she was coming down on her own side of the channel, i. e. on the Jersey side, and the Baltimore and her tow were on the Staten Island side. At that time there was no danger of collision, but when the distance had narrowed to one-quarter of a mile that seemed more likely, for the Henry Lee "started to come out in the channel more". He said the barges were sheering toward the Staten Island side and appeared out of control. He placed the collision "where the red light was".

Good testified that at the time of the collision the Henry Lee was about 20 feet from the black buoy on her own starboard side of the channel, and that her barges were to the northward of the black buoy, and that at the time of the collision the St. Martin was about abreast of the red buoy. Kronek, who was master of the Baltimore, placed the tug Henry Lee about 10 or 15 feet northeast of the black buoy, heading at right angles to her tow. Mullen, another master of the Baltimore, though not on watch, came out from the galley before the collision. He placed the Henry Lee at the time of the collision at about 25 or 30 feet northward from the black buoy, her stem heading for the buoy though it had not reached it.

To sum up the contrary versions of what occurred at or about the time of the collision, it would seem that both the people on the Baltimore and those on the Henry Lee, when each sighted the other, believed that there was no danger of collision and that a port to port passage was feasible. It would seem too that the contributing factors which dissipated the notion of safety were the set of the tide and the bend in the navigable stream. The probabilities are that the Baltimore was so navigated as to avoid the possibility of fouling either the red buoy or the wrecks in the vicinity thereof, and accordingly hauled over too far toward the Jersey shore.

Now it is contended by the Baltimore that the tug Henry Lee violated the narrow channel rule, Article 25, of the Inland Rules, 33 U.S.C.A. § 210, urging that the collision took place on the Staten Island side of the channel. The Baltimore contends that it was the duty of the Henry Lee, which was stemming the tide, to hold back and wait for the Baltimore's tow to pull clear, citing The Galatea, 92 U.S. 439, 23 L.Ed. 727; The Edna V. Crew, D.C., 182 F. 890. But it is doubtful whether that would have been good navigation on the part of the Henry Lee since she had her boats on hawsers 100 feet in length. Doubtless her captain believed that it was wiser to come on full speed in the effort to pull his barges clear. The way the Baltimore tow was made up it was very much easier for the Baltimore to stop as she did, Western Transit Co. v. Davidson S. S. Co., 6 Cir., 212 F. 696. The Baltimore apparently saw the danger before the Lee for she not only stopped her engines but also blew a danger signal.

There is no doubt that when the Baltimore first sighted the Henry Lee the Lee tow was on its own starboard side of the channel; also that when the collision occurred the Lee was close to the black buoy on her own starboard side. Divergence, however, develops when the testimony relates to the position of the Lee tow. The evidence seems to warrant the inference that at the place of collision the bows of the Lee barges had not reached a point at which the tide would have set them over

to the Staten Island shore. That is shown by Good's sketch of the set of the tide found on libellant's Exhibit 1, where the point of collision by Good is north of the black buoy. This exhibit shows a line of shallow water runs to the westward, forming a right angle with the black buoy.

On the whole I think the Henry Lee is free from fault. Accordingly the libellant may have a decree against the respondent. Its petition against the respondents impleaded will be dismissed. Concurrently with this opinion appropriate findings of fact and conclusions of law will be filed.